UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| EDNA WHITWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 06-112-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CONSOLIDATED BISCUIT COMPANY | ) | |
| d/b/a LAUREL COOKIE FACTORY, | ) | **MEMORANDUM OPINION** |
| JOYCE BARBOA, and CAREY | ) | **AND ORDER** |
| KOPLOWITZ, | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of Plaintiff Edna Whitworth's motion for partial summary judgment on her claims under the Family Medical Leave Act ("FMLA"), and the Defendants' motion for summary judgment on all claims. [Record Nos. 42 and, 45]  Having reviewed the parties' briefs and being otherwise sufficiently advised, the Court finds that the Plaintiff cannot establish at least one essential element of each of her claims.  Accordingly, the Defendants' motion for summary judgment will be granted.

## I.       BACKGROUND

This litigation arises from Whitworth termination of employment on October 10, 2003. Defendant Laurel Cookie Factory, also known as Consolidated Biscuit Company ("the Factory") operates a facility in Laurel County, Kentucky, where it makes and packages cookies and related snack foods.  The Factory employed Whitworth from July 1995, until her termination in October

2003.  At the time of her termination, Defendant Carey Koplowitz was the plant manager and Defendant Joyce Barboa was the human resources manager.

The Factory has a "No-Fault Attendance Policy," which provides that employees may be discharged when they accumulate 24 points due to absences and tardiness.  Whitworth acknowledges that she received a copy of the attendance policy in her Employee Handbook.  Whitworth also acknowledges that she was absent from work from September 29, 2003, to October 10, 2003, and that these absences resulted in her accumulating of over 24 points.  However, Whitworth contends that she requested leave for a serious health condition under the FMLA, and, therefore, should not have accumulated any points for that period pursuant to company policy and federal law.  The Defendants contend that Whitworth was not entitled to leave under the FMLA because she was not incapacitated and because they reasonably believed that her request for FMLA leave was fraudulent.

Whitworth initially notified her employer during the week of September 22, 2003, that she was going to be absent around September 26, 2003.  However, the parties disagree over whether she sufficiently notified the Factory that the requested leave was for an FMLA-qualifying condition.  According to the Defendants, Whitworth only requested "personal leave" to see her lawyer and take care of issues regarding her ex-boyfriend's release from jail.  The Defendants denied Whitworth's request for leave, and Whitworth took a vacation day on September 26, 2003.

Whitworth alleges in her Complaint that she began calling Barboa on Monday, September 29th, to inform her that she needed to be on medical leave due to stress and anxiety.  Whitworth

further claims that she obtained a FMLA leave slip from the Defendants on or about October 2, 2003, after she was unable to reach Barboa on September 29th. Whitworth took the form to her treating physician, Dr. Hoskins, to be filled-out. She states that she returned the form to the Defendants on October 3, 2003. At that time, Helen, an assistant to Barboa, informed Whitworth that the form was incomplete and refused to accept it. Whitworth then asked Helen to write down what needed to be changed on a "sticky note" and attach it to the form.

On Monday, October 6th, Whitworth requested that Dr. Hoskins' office fill-out the form a second time. This was the first and only time that Whitworth was seen by her doctor during her alleged period of incapacity. She took the completed form to Barboa at the Factory, and Barboa advised her that she should call later to make sure that the application was sufficient.

Over the next few days, Barboa contacted Dr. Hoskins' office a few times to verify the accuracy of the form. According to the Defendants, the form appeared to have been altered as to the dates and diagnosis (i.e., the form was signed and dated October 10, 2003, rather than October 6, 2003, and did not properly state that Whitworth was unable to work). [See Record No. 42, Ex. 10] The original form obtained from Dr. Hoskins medical records reflects that it was altered to include a period of incapacity through October 12th, rather than October 10, 2003, and also altered with the addition diagnosis: "Dx: Anxiety." [*Id.*]

Whitworth claims that she attempted to contact Barboa all week to make sure the form was accepted. However, she did not reach Barboa until Thursday, October 9th. According to Whitworth, Barboa did not mention any problems with the form and told her to return to work on Monday, October 13th. However, in her Complaint, Whitworth also claims that Barboa

informed her that her absences through October 4, 2003, would not be excused as FMLA leave, and that "she should just quit and come back in six months with a fresh start." [Record No. 19, p. 5]  This alleged statement appears to be the basis of Whitworth's claim for promissory estoppel.  However, Whitworth claims that she then told Barboa that she would return on Monday, October 13, 2003, consistent with her medical certification form.

On October 10th, Dr. Hoskins' office sent Barboa a letter informing her to disregard the certification form.  More specifically, the letter states:

> I am writing in reference to our phone conversation on 10/10/03 regarding Edna Whitworth.  Unfortunately, we are not able to honor her request for medical leave. Please disregard the Certification of Health Care Provider form that you received from my office.  In addition, Ms. Whiworth [sic] was seen in my office on 10/06/03 and no other date in October.

[Record No. 42, Ex. 14]  Upon receipt of the letter, the Defendants state that they counted Whitworth's absences from September 29, 2003, to October 10, 2003, and that Whitworth had accumulated more than 24 points. On that same date, Whitworth was asked to come to the facility and meet with Barboa and Brent Gabbard.  At that time, Whitworth was terminated for accumulating too many points and for altering dates on the certification form.

The Defendants contend that, at the termination meeting, Whitworth did not make any statements about her medical condition or about having anxiety.  The Defendants further contend that Whitworth stated that she was going to go back to Dr. Hoskins and get him to change his opinion.  The listed reasons on Whitworth's signed termination form include "violation of 'Plant Rules and Regulations' # 9, under dischargeable offenses Section A + Accumulating 27.0 points

-4-

against a 24.0 point attendance policy.  # 9, Willfully falsifying any company reports, records, insurance claims, etc." [Record No. 42, Ex. 15]

Thereafter, on October 21, 2003, Barboa received a second letter from Dr. Hoskin's office  stating that there was a "miscommunication" in his office and that "[t]he dates of Ms. Whitworth's period of incapacity are from 9/29/03 to 10/12/03." [See Record No. 42, Ex. 16] After receiving this letter, Barboa discussed the Factory's options with Koplowski and the Vice President of Human Resources, Jack Johnson.  The Factory ultimately decided that the termination decision would not be reversed.

The Defendants also contend that Whitworth's request for leave under the FMLA was fraudulent because she was not incapacitated and because she was attempting to spend time with her ex-boyfriend who was allegedly the cause of her anxiety.  In support, they point to court documents allegedly signed by Whitworth on October 6, 2003, requesting that the restraining order be lifted to allow Whitworth to see her ex-boyfriend.  The Defendants further point to the fact that Whitworth has repeatedly stated that she "would have worked" if she had known that she was not going to be approved for leave to show that she was not "incapacitated" as required under the FMLA.  Finally, the Defendants direct the Court's attention to the numerous tasks that Whitworth did perform during her alleged period of incapacity, such as visiting lawyers, household chores, and even coming to the Factory to pick up leave slips.

Whitworth contends that the Defendants wrongfully denied her leave under the FMLA due to the miscommunication with her doctor, resulting in her termination.  She initially filed this action in state court on February 14, 2006, and the Defendants removed the case to this

Court one month later.  In her Amended Complaint, Whitworth alleges a retaliation claim under the FMLA, an interference claim under the FMLA, a claim for promissory estoppel under Kentucky law, and a claim for the tort of outrage under Kentucky law.

The Defendants have moved for summary judgment on all of Whitworth's claims.  They contend that she cannot prove an essential element of each of her claims and that her claims under the FMLA are time-barred.  In response, Whitworth asserts that a genuine issue of material fact exists with respect to her common law claims.  Additionally, she has moved for partial summary judgment concerning her FMLA claims.  She contends that the Defendants committed a direct violation of the FMLA by calling her doctor and that they terminated her for attempting to exercise her FMLA rights.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists.  *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 983 (E.D.Ky. 1993).  Once a moving party has met its burden of production, "'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."

*Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).  The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits to support its claims.  *Celotex*, 477 U.S. at 324.

In reviewing a party's motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, and summary judgment is appropriate whenever that non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 251-52.).

## III.  ANALYSIS

### A.  FMLA

The FMLA affords eligible employees up to twelve weeks of unpaid leave during any twelve month period for a serious health condition that makes them unable to perform the functions of their positions.  *See* 29 U.S.C. § 2612(a)(1).  The Act is designed to protect employees and prohibits any attempt by employers to interfere with, restrain or deny an employee's exercise of FMLA rights.  *See* 29 U.S.C. § 2615(a)(1).  The Act further prohibits an

Case: 6:06-cv-00112-DCR-REW   Doc #: 88   Filed: 04/06/07   Page: 8 of 27 - Page ID#: 1321

employer from discharging or discriminating against an employee for exercising her FMLA rights.  *See* 29 U.S.C. § 2615(a)(2).

Here, Whitworth claims that the Defendants have violated both the interference and the retaliation provisions of the FMLA, §§ 2615(a)(1) and (2).[1]  To prevail on either of these claims, a plaintiff must first demonstrate that she was suffering from a "serious health condition that makes them unable to perform the functions of the position."  29 U.S.C. § 2612; *see also Turner v. Sullivan University Sys*., 420 F. Supp. 2d 773, 789 (6th Cir. 2006).  The FMLA defines a "serious health condition" as

an illness, injury, impairment, or physical or mental condition that involves–

(A) inpatient care in a hospital, hospice, or residential medical care facility; or

(B) continuing treatment by a health care provider.

---

[1] The Defendants have raised a statute of limitations defense to Whitworth's claims under the FMLA. Generally, a plaintiff has two years within which to bring her claim under the FMLA.  However, an extended three-year statute of limitations is available if a plaintiff can show a "willful" violation.  *See* 29 U.S.C. § 2617(c). The Sixth Circuit has held that "[a]n employer commits a willful violation of the FMLA when it acts with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements; therefore, the determination of willfulness involves a factual question."  *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004); *see also Williams v. Northwest Airlines, Inc.*, 53 F. App'x 350, 352 (6th Cir. 2002) (unpublished) (stating that "[a] willful violation [of the FMLA] is shown when an employer knew or showed reckless disregard regarding whether its conduct was prohibited") (*citing McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-35 (1988)).

Here, there is no dispute that the two-year statute of limitations expired on October 10, 2005, and that Whitworth did not file her Complaint until February 14, 2006.  Accordingly, her claims are barred unless she can show that the Defendants committed a willful violation.  *See Williams v. Schuller Int'l, Inc.*, 29 F. App'x 306 (6th Cir. 2002).  In her response to the Defendant's motion for summary judgment, Whitworth contends that the Defendants committed several alleged willful violations.  *See* Record No. 53, p. 21-26.  Although it appears that there may be some merit to at least one of these alleged willful violations, Whitworth claims under the FMLA fail because she was not incapacitated during the period in question.  And because Whitworth's claims cannot survive this threshold consideration, she is not entitled to the FMLA's protection, and the Court need not reach the more fact-based inquiry of whether the alleged violations were willful.  *See Olsen v. Ohio Edison Co.*, 979 F. Supp. 1159, 1164 (N.D. Ohio 1997).

-8-

29 U.S.C. § 2611.  It is undisputed that Whitworth did not receive inpatient care in connection with the September 29 through October 10, 2003, absences.  Therefore, she must show that she was suffering from a serious health condition involving continuing treatment.  *See Bond v. Abbott Lab.*, 7 F. Supp. 2d 967, 973 (N.D. Ohio 1998).

Title 29 of the Code of Federal Regulations, Section 825.114(a)(2), defines a "serious health condition involving continuing treatment" as follows:

A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i)  A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A)  Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(B)  Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114.  Accordingly, Whitworth must show that she was incapacitated for a period of at least three days, and that either she was treated two or more times or she was treated at least once resulting in a regimen of continuing treatment.  *Id.*; *see also Bond*, 7 F. Supp. 2d at 973 (*quoting Olsen*, 979 F. Supp. at 1164) ("A plaintiff who has not been an inpatient but who claims to have suffered a 'serious health condition' under the FMLA must 'make a two-pronged showing of both an incapacity requiring absence from work and continuing treatment.'")

The determination of whether a plaintiff was incapacitated within the meaning of the FMLA is a threshold consideration for her claims under the FMLA. *Olsen*, 979 F. Supp. at 1164 ("Before the Court even considers the 'continuing treatment' prong of the definition of serious medical condition set forth in 29 C.F.R. § 825.114(a)(2), however, "[a plaintiff] must first demonstrate that he suffered from a period of incapacity within the meaning of that regulation. Under the plain language of the statute and regulations, this is the threshold consideration.") "Indeed, it is only where an incapacity is shown that the Court need proceed to a consideration of whether the employee received 'continuing treatment' within the meaning of the Act." *Id.* "If a plaintiff cannot show that he or she had a condition that incapacitated him or her, 'the Court's inquiry is over and summary judgment is appropriate.'" *Bond*, 7 F. Supp. 2d at 973 (*quoting Olsen*, 979 F. Supp. at 1164).

### i.   The Defendants Have Not Waived Their Ability To Challenge Whitworth's "Incapacity".

Whitworth first contends that the Defendants have waived their ability to challenge her "incapacity" because the Defendants failed to utilize the FMLA's procedures for obtaining a second or third opinion as set forth in 29 U.S.C. § 2613.[2] In support of her argument, Whitworth

---

[2] Whitworth also contends that the Defendants have waived their ability to challenge her incapacity because Barboa admitted at her deposition that she believed Whitworth was suffering from a serious health condition. However, this argument is without merit. The fact that Barboa stated that she believed that the Whitworth was suffering from a serious health condition is irrelevant to the this Court's determination of her eligibility under the FMLA. The law is well-settled that, to prevail on a claim under the FMLA, "the plaintiff has the burden to establish the objective existence of a serious health condition." *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1112 (6th Cir. 1997) (emphasis added); *see also Brooks v. Lowe's Home Ctrs.*, 2006 U.S. Dist. LEXIS 17003, *23 (S.D. Oh. Mar. 27, 2006); *Loomis v. Honda of Am. Mfg.*, 2003 U.S. Dist. LEXIS 26797 ("the Sixth Circuit has held that an FMLA plaintiff has the 'burden to establish the objective existence of a serious health condition.' If a good faith belief were all that was required to invoke coverage under the FMLA, courts would be relieved of any obligation to examine the actual facts surrounding a plaintiff's condition.") (citation omitted).

cites *Smith v. University of Chicago Hospitals*, 2003 U.S. Dist. LEXIS 20965, \*21-26 (N.D. Ill. Nov. 20, 2003) and *Wheeler v. Pioneer Developmental Services, Inc.*, 349 F. Supp. 2d 158, 168 (D. Mass. 2004). These cases generally hold that an employer who fails to utilize the procedures for obtaining second and third medical opinions under 29 U.S.C. § 2613[3] cannot later challenge that employee's entitlement to FMLA leave. *See Smith*, 2003 U.S. Dist. LEXIS at \* 26; *Wheeler*, 349 F. Supp. 2d at 168.

Although Whitworth accurately cites the holdings in these two cases, several other courts have addressed this issue, including the Fourth and Eighth Circuit Courts, and have reached the opposite conclusion. *See Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858 (8th Cir. 2000); *Rhoads v. FDIC*, 257 F.3d 373, (4th Cir. 2001). In *Stekloff*, the plaintiff raised the same argument that is currently before the Court: that is, whether an employer who is now challenging the validity of an employee's claim for FMLA leave waives its right to do so by failing to obtain a second or third opinion under 29 U.S.C. § 2613. *Stekloff*, 218 F.3d at 860. Initially, the Eighth

---

[3] Section 2613(c)(1) of Title 29 of the United States Code provides that,

> In any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) for leave under subparagraph (C) or (D) of section 102(a)(1) [29 USCS § 2612(a)(1)(C) or (D)], the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under subsection (b) for such leave.

29 U.S.C. § 2613(c)(1). Additionally, 29 U.S.C. § 2613(d)(1) states that,

> In any case in which the second opinion described in subsection (c) differs from the opinion in the original certification provided under subsection (a), the employer may require, at the expense of the employer, that the employee obtain the opinion of a third health care provider designated or approved jointly by the employer and the employee concerning the information certified under subsection (b).

29 U.S.C. § 2613(d)(1).

Circuit noted that the language of § 2613(c) is permissive, not mandatory, as it "states that an employer with 'reason to doubt the validity' of the employee's certification 'may' require the employee to obtain the opinion of a second health care provider." *Id*. The court concluded that it did "not read § 2613(c)(1) as requiring an employer to obtain a second opinion or else waive any future opportunity to contest the validity of the certification." *Id*.

Similarly, in *Rhoads v. FDIC*, the Fourth Circuit adopted the Eighth Circuit's holding in *Stekloff*, and noted that, "[i]n doing so, we recognize that 'under the most basic canon of statutory construction, we begin interpreting a statute by examining the literal and plain language of the statute.'" *Rhoads*, 257 F.3d at 385 (*citing Carbon Fuel Co. v. USX Corp*., 100 F.3d 1124, 1133 (4th Cir. 1996)). The court concluded that "the plain language of the Act does not suggest that an employer must pursue these procedures or be forever foreclosed from challenging whether an employee suffered from a serious health condition; and nothing in the legislative history of the FMLA explicitly supports that interpretation." *Id*.

The Sixth Circuit has never explicitly addressed the issue of whether an employer waives its right to challenge an employee's incapacity, but it has cited the *Rhoads* and *Stekloff* decisions with approval. *See Sorrell v. Rinker Materials Corp*., 395 F.3d 332 (6th Cir. 2005). In *Sorrell*, the district court granted the employer's motion for summary judgment because the employee had relinquished his position prior to taking FMLA leave. However, the Sixth Circuit remanded the case for the district court to consider the effect of the employer's unconditional approval of the employee's request for leave "on its subsequent ability to contest his entitlement to leave." *Id*. at 336. The court stated that it was most concerned with the mandatory provision of 29

-12-

C.F.R. § 825.305(d), which provides that an "employer shall advise an employee whenever the employer finds the certification incomplete, and provide the employee a reasonable opportunity to cure the deficiency." 29 C.F.R. § 825.305(d).  In so doing, the Sixth Circuit noted that "29 C.F.R. § 825.305(d) . . . unlike the others invoked by Sorrell, imposes an affirmative duty on an employer that finds a medical certification incomplete; the language in the other two provisions – i.e., 29 U.S.C. § 2613(c)(1) and 29 C.F.R. § 825.307(a) – is merely permissive." *Sorrell*, 395 F.3d at 337 (*citing Rhoads*, 257 F.3d at 386; *Stekloff*, 218 F.3d at 860).

In the wake of *Sorrell*, *Rhoads*, *Stekloff*, as well as the cases cited by the Plaintiff, several district courts within this circuit have squarely confronted the issue and concluded that an employer does not waive his right to challenge an employees' entitlement to FMLA protection by failing to follow the *permissive* procedures outlined in § 2613.  *See, e.g., Mitchell v. County of Wayne*, 2007 U.S. Dist LEXIS 18549, *11 (E.D. Mich. Mar. 16, 2007) (denying the plaintiff's motion in limine to exclude any evidence that would challenge the plaintiff's serious health condition and adopting the Fourth Circuit's approach in *Rhoads*); *Hemenway v. Albion Public Schools*, 2006 U.S. Dist. LEXIS 36231, *6 (W.D. Mich. Jan. 12, 2006).

In *Hemenway v. Albion Public Schools*, the District Court for the Western District of Michigan held that,

> Section 2613(a) provides that an employer may require an employee's need for leave be substantiated by certification, but does not require it must seek certification.  The Secretary of Labor's accompanying regulations echo that same permissive grant.  *See* 29 C.F.R. § 825.305; *id*. § 825.307.  Under the plain language of section 2613(a), Defendant has the option of requesting certification but is no way obligated to do so.  *Cf. Rhoads v. FDIC*, 257 F.3d 373, 385-86 (4th Cir. 2001); *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 860 (8th Cir. 2000); *see also Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337 (6th Cir.

2005) (*citing Rhoads* and *Stekloff* with approval).  Nothing in the Act or its legislative history suggests that Defendant must pursue its options under section 2613(a) or forfeit its right to later challenge whether Plaintiff suffered from a serious health condition.  *Rhoads*, 257 F.3d at 386.  Therefore, the Court finds that despite Defendant's failure to request certification when Plaintiff initially requested FMLA leave, Defendant is not barred from now challenging whether she suffered from a serious health condition.

*Hemenway*, 2006 U.S. Dist. LEXIS 36231 at *6.

This Court agrees with the reasoning in *Hemenway* and *Mitchell* and concludes that the Fourth and Eighth Circuits' interpretation of the FMLA's requirements is the correct approach under the plain reading of the statute and the Sixth Circuit's analysis in *Sorrell*.  The procedures outlined in § 2613 are permissive, not mandatory, and an employer does not waive his right to challenge an employee's allegations of incapacity by failing to utilize them.  "Whether a plaintiff has a serious health condition is one of the critical elements of proving an FMLA violation.  Unless Defendants stipulate that Plaintiff suffered from a serious health condition, Plaintiff has the burden of establishing that [s]he did."  *Mitchell,* 2007 U.S. Dist. LEXIS at *12.

In the present case, the Defendants did not initially grant Whitworth's request for leave and *did* follow the mandatory procedure outlined in 29 C.F.R. § 825.305.  Thus, they are not precluded from challenging Whitworth's claim of incapacity.[4]  It is undisputed that the

---

[4]  The Defendants also argue that they have not waived their right to challenge Whitworth's incapacity because the second certification form submitted on October 6, 2003, does not properly state that Whitworth was unable to work. [*See* Record No. 42, Ex.10.]  The Defendants accurately note that the form clearly states "NO" in response to the question "If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?"  However, no response is listed to the next question which states: "If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or employer should provide you with information about the essential job function)?"  This second question is more relevant to the inquiry that is currently before the Court, because the issue under the FMLA is whether the employee is unable to perform the functions of her job.  Accordingly, the Court disagrees with the Defendants' contention that the form "clearly

Defendants initially denied Whitworth's request for personal leave during the week of September 26, 2003.  It is also undisputed that Barboa told Whitworth that she should call to confirm that her application for FMLA leave was accepted and that she did not unconditionally accept the form.

Additionally, there is no dispute that the Defendants informed Whitworth that the FMLA certification form she submitted on October 3, 2003, was incomplete.  The Defendants then complied with the mandatory provision of 29 C.F.R. § 825.305 and afforded Whitworth an opportunity to cure any deficiency in the form.  At her deposition, Whitworth testified that the Defendants even attached a "sticky note" to the form so that she could have it filled out correctly by her health care provider.  Accordingly, the Defendants satisfied the mandatory requirement under 29 C.F.R. § 825.305 and the Sixth Circuit's analysis in *Sorrell*.

In summary, because the Defendants complied with the mandatory requirements regarding the FMLA certification and because the Court finds that the procedures in 29 U.S.C. § 2613(c)(1) and 29 C.F.R. § 825.307(a) are permissive, the Defendants have not waived their ability to challenge Whitworth's incapacity.

### ii.      Whitworth Was Not "Incapacitated" Within The Meaning Of The FMLA.

The Court must next address whether Whitworth was incapacitated as a matter of law. *See Hornbuckle v. Detroit Receiving Hospital & University Health Center*, 407 F. Supp. 2d 853, 860 (E.D. Mich. 2005).  As noted previously, "if a plaintiff cannot show that he or she had a

---

reflects that she is able to work, and therefore did not suffer from a serious health condition within the meaning of the FMLA."  [Record No. 63, p. 7]

condition that incapacitated him or her, 'the Court's inquiry is over and summary judgment is appropriate.'" *Bond*, 7 F. Supp. 2d at 973 (*quoting Olsen*, 979 F. Supp. at 1164).

To establish that she was incapacitated within the meaning of the FMLA, a plaintiff must prove that she suffered from an "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." 29 C.F.R. § 825.114(a)(2)(i). This determination is a question of law, and the plaintiff bears the burden of proving the objective existence of a serious health condition that incapacitated her during the period in question. *See Hornbuckle*, 407 F. Supp. 2d at 860 ("[I]t is not a question of fact whether she suffered from a serious health condition. To be sufficient under the FMLA, the Court must determine whether she had a 'serious health condition' as that term is defined in the Department of Labor's regulations.")

Here, the Plaintiff claims that she was incapacitated due to anxiety in connection with the release of her ex-boyfriend from jail. In support of her alleged incapacity, she states that she was scared and did not participate in her normal activities, such as running errands, taking her daughter to school, going to church, going to the grocery store, or even staying in her own home. Instead, Whitworth states that she stayed with her parents (who apparently lived within walking distance of her home) "unless [she] got brave enough to go home." [Record No. 44, Ex. 2, p.9-10] Whitworth further states that she was crying all the time, that she could not even leave the house to attend a counseling session, and that she could not work because "[her] nerves had had it." [Id. at p. 39]. Finally, Whitworth directs the Court's attention to her medical certification

form and Dr. Hoskins' medical notes which reflect that her blood pressure was 169/101 and recommend a couple of weeks off due to stress and anxiety.

The Defendants contend that Whitworth has not established that she was incapacitated within the meaning of the FMLA.  First, the Defendants note that Whitworth has stated more than once that she would have worked during her alleged period of incapacity.  Next, the Defendants point out that she did perform daily activities, such as traveling to and from her doctor's office, the Factory, and her lawyer's office on multiple occasions throughout the relevant period.  They also note that, although she contends that the onset date of her incapacity was around September 29, 2003, she was not seen by her health care provider until October 6, 2003.  The Defendants further direct the Court's attention to the fact that court documents from the Laurel Circuit Court show that Whitworth signed a motion to amend the domestic violence order on October 6, 2003, to allow her to have contact with her ex-boyfriend.  This document was then filed with the Court on October 13, 2003. [See Record No. 42, Ex. 7] Finally, the Defendants note that the medical certification form states that Whitworth was able to do some work and that Dr. Hoskins testified that he did not fill-out or sign the certification form.

As an initial matter, the Court concludes that, contrary to Whitworth's argument, it is appropriate to consider the after-acquired evidence relevant to Whitworth's claims of incapacity, such as the motion to amend the domestic violence order and Whitworth's repeated statements that she would have worked during the time in question.  *See Bauer*, 118 F. 3d at 1112 ("Since the plaintiff has the burden to establish the objective existence of a serious health condition, and

subsequent developments are relevant to such an objective inquiry, we may consider Bauer's course of action after his employment was terminated.")

Title 29 of the Code of Federal Regulations, Section 825.114(d), provides that "[m]ental illness resulting from stress or allergies may be serious health conditions, but only if all conditions of this section are met." 29 C.F.R. § 825.114(d). As the court stated in *Olsen v. Ohio Edison Co.*, Congress did not intend "[t]he slings and arrows of everyday life . . . to be the stuff of a federal statute, nor federal litigation based on it." *Olsen*, 979 F. Supp. at 1163. "Plainly, . . . Congress sought to protect employees suffering from *serious* illnesses only." *Bradley v. Mary Rutan Hosp. Assoc.*, 322 F. Supp. 2d 926, 942 (S.D. Ohio 2003) (emphasis in original).

Here, Whitworth has failed to establish that she was suffering from a serious health condition that caused her to be incapacitated for a period of three or more days. As noted above, to establish that she was incapacitated within the meaning of the FMLA, Whitworth must prove that she suffered from an "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." 29 C.F.R. § 825.114(a)(2)(i). At her deposition, Whitworth clearly testified that she could have and would have worked during the period in question.[5] Moreover, Whitworth submitted a handwritten statement to the Department of Labor stating that she "would of [sic] went back to work" if she had known that her application for leave would not be accepted. [Record No. 42, Ex. 9] The law is well-settled that "[t]he possibility that a person can work removes FMLA

---

[5] At her deposition, Whitworth testified, in response to the question, "[a]nd so I asked you earlier if you could have worked during that week, and here, you're saying you could have gone back to work, correct?" that "If I had to, I would have." [Record No. 44, Ex. 3 p. 4]

protection." *See Jarvis v. Gerstenslager Co.*, 2003 Ohio App. LEXIS 2839, *15 (Ohio Ct. App. June 18, 2003); *Cole v. Sisters of Charity of the Incarnate Word*, 79 F. Supp. 2d 668, 672 (E.D. Tx. 1999). Accordingly, because Whitworth has repeatedly testified that she would have gone back to work, the Court finds that she was not incapacitated within the meaning of the FMLA.

However, even if Whitworth's repeated admissions that she would have worked were insufficient to conclude that she was not incapacitate within the meaning of the FMLA, other evidence supports the Defendants' motion for summary judgment. For example, Whitworth continued to perform daily activities such as doing laundry and traveling to and from work, her lawyer's office, and her doctor's office. Immediately after testifying that she was unable to do anything during her period of incapacity, Whitworth admitted that she would go down to her house to do laundry and that she visited her doctor's office and the Factory multiple times. [Record No. 44, Ex. 2, p.10]; *See Jarvis*, 2003 Ohio App. LEXIS 2839 at *15 (holding that a plaintiff's performance of regular daily activities such as housework demonstrate that she is not incapacitated within the meaning of the FMLA). Additionally, documents from Laurel Circuit Court clearly show that Whitworth filed a motion to modify the domestic violence order to allow her to see her ex-boyfriend, and that she signed and dated the motion on October 6, 2003. And while this document was not filed until October 13, 2003, its existence severely undercuts her contention that she was scared and suffering from anxiety due to her the release of her ex-boyfriend from jail.

Accordingly, viewing the facts in the light most favorable to the Plaintiff, Whitworth has failed to present evidence to support her claim that she was incapacitated within the meaning of

the FMLA.[6]   Because Whitworth cannot survive this "threshold consideration" under the

FMLA, she has failed to establish that she was entitled to FMLA leave or that she was engaged

in an FMLA protected activity.  Thus, the Defendants are entitled to judgment on her claims for

interference and retaliation under 29 U.S.C. § 2615.

### B.   Promissory Estoppel

The Defendants have also moved for summary judgment on Whitworth's state law claims

for promissory estoppel and the tort of outrage.  Under Kentucky law, a plaintiff must establish

the following four elements to succeed on a claim for promissory estoppel: "(1) a promise; (2)

which the promisor should reasonably expect to induce action or forbearance on the part of the

promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided

---

[6]  The Court does not consider the medical certification form and medical notes from Dr. Hoskins'
office to be persuasive regarding Whitworth's claims of incapacity.  In *Olsen*, the court noted that

> in order to show that he or she was "required" to miss work for more than three days, a
> plaintiff employee must show that he or she was prevented from working because of the
> injury or illness based on a medical provider's assessment of the claimed condition.  It does
> not mean that, in the employee's own judgment, he or she should not work, or even that it
> was uncomfortable or inconvenient for the employee to have to work. Rather, it means that
> a "health care provider" has determined that, in his or her professional medical judgment,
> the employee cannot work (or could not have worked) because of the illness. *Seidle*, 871 F.
> Supp. at 244. n11.  If it were otherwise, a note from a spouse, parent, or even one's own
> claim that one cannot work because of illness would suffice.

*Olsen*, 979 F. Supp. at 1166. Here, Dr. Hoskins office clearly stated in its October 10, 2003, letter that
Whitworth was only seen in his office on October 6, 2003, and no other date.  However, Whitworth submitted
a form that was filled-out by that office on October 3, 2003.  Clearly, Dr. Hoskins did not exercise his own
professional medical judgment over that first opinion.  Additionally, Dr. Hoskins testified that he did not sign
or fill-out the form that was submitted on October 6, and that he most likely did not see Whitworth on that
date.  Further, the original certification form provided from Dr. Hoskins's filed reflects that the form was
altered as alleged by the Defendants, specifically, as to the dates of incapacity and the notation "Dx:
Anxiety."  Finally, Whitworth has repeatedly stated throughout this litigation that she would have gone back
to Dr. Hoskins and told him to take her off leave if she had known her application for FMLA leave would
not be accepted.  In light of these facts, the Court concludes that Dr. Hoskins did not determine, in his own
professional judgment, that Whitworth was incapacitated during the period in question.

only by enforcement of the promise." *Bergman v. Baptist Healthcare Sys.*, 344 F. Supp. 2d 998, 1003 (W.D. Ky. 2004) (citations omitted).

In the present case, Whitworth contends that, during her October 9, 2003, conversation with Barboa, Barboa promised to re-hire her in six months. Whitworth claims that she relied on this promise and injustice can only be avoided by giving Whitworth her job back.[7] In support, Whitworth directs the Court to her own deposition testimony and her calendar entries from October 16, 2003, to January 13, 2004, which allegedly reflect numerous calls to the Defendants in an attempt to get her job back. She further points to the fact that she filed a claim with the Department of Labor on or about April 19, 2004, just after the six months from the time of her termination had expired. Finally, she generally avers that "[b]ased upon the above testimony and actions by Edna, it is clear that she was anticipating that she would receive her job back, that she relied upon a promise by Barboa to bring her back within six months and that an injustice can only be avoided by giving  Edna's her [sic] job back." [Record No. 53, p. 35]

The Defendants contend that Whitworth has failed to show that she relied on the alleged promise to re-hire her within six months. More specifically, they assert that she has not presented any evidence of "induced action or forbearance." [Record No. 63, p. 13] The Defendants further argue that if Whitworth had reasonably relied on Barboa's promise, she

---

[7] In her Complaint, Whitworth alleges what appears to be multiple bases for her claim for promissory estoppel related to the period prior to her termination. The Defendants initially addressed all these issues in their motion for summary judgment. However, in her response to the Defendants' motion, Whitworth states that her sole claim for promissory estoppel is based on the alleged promise by Barboa during the October 9, 2003, conversation. [*See* Record No. 53, p. 32-35] Accordingly, because Whitworth has failed to present any evidence related to the other allegations in her complaint, no genuine issue of material fact exists and the Defendants are entitled to judgment as a matter of law on any other claims for promissory estoppel presented in the Complaint. *See Celotex*, 477 U.S. at 324.

would have attempted to get her job back in April, 2004, after the six months had passed. Instead, Whitworth claims that she repeatedly called the Defendants in December, 2003, and January, 2004, to try to get her job back, but the Defendants accurately point out that these calls ceased on January 13, 2004, only three months after her termination. Additionally, the Defendants note that she testified that she filed a charge with the Department of Labor because she could not afford a toy for her son, not because the factory refused to re-hire her. [See Record No. 44, Ex.3, p.9-10]

As noted above, once a party moving for summary judgment has met its burden of production, the nonmoving party cannot just rely on her assertions in the pleadings. That party must come forward with probative evidence, such as sworn affidavits to support her claims. *Celotex*, 477 U.S. at 324. Here, Whitworth has not presented any evidence that Barboa's promise induced action or forbearance. Instead, she asserts that a genuine issue of material fact exists as to whether Barboa made the promise to rehire her in six months.[8] However, even assuming that the promise was made, Whitworth has still failed to present *any* evidence that she relied on that promise.

Moreover, Whitworth has failed to show that Barbao should have reasonably expected that Whitworth would rely on the alleged promise. To the contrary, Whitworth alleged in her Complaint and testified at her deposition that, after Barboa told her that she should just quit and

---

[8]  Whitworth also states that she told her doctor in November, 2004, that she had worked for the Factory for eight years.  It is undisputed that Whitworth was terminated by the Defendants in October, 2003, and that she filed her charge with the Department of Labor in April, 2004.  Accordingly, the Court fails to see the relevance of this alleged statement to her claim for promissory estoppel.  Whitworth has failed to present any evidence to show that she relied on the Defendants' claim, and the Defendants are thus entitled to judgment as a matter of law on her claim.

come back in six months with a fresh start, she told Barboa that she would return to work on Monday consistent with her medical leave form. [Record No. 19, p.5] A reasonable person would conclude that Whitworth did not want to quit and come back in six months. And, in fact, Whitworth did not quit, but was terminated on October 10, 2003. Accordingly, the Court also finds that Whitworth has failed to present evidence sufficient to establish that the Defendants should have reasonably expected her to rely on the promise to hire her back in six months.

Because Whitworth has failed to produce any probative evidence to support the elements of her claim, no genuine issue of material fact exists in this regard. Accordingly, summary judgment in favor of the Defendants is appropriate with respect to Whitworth's promissory estoppel claim.

### C.   The Tort of Outrage

Finally, the Defendants contend that Whitworth has failed to establish an essential element of her claim for the tort of outrage under Kentucky law.[9] In particular, the Defendants state that she has not alleged any conduct that rises to the requisite level of outrageous and

_____

[9] The Defendants also contend that Whitworth's claim for the tort of outrage is preempted because she has alleged the same facts in support of her claims under the FMLA. Under Kentucky law, the tort of outrage is a "'gap-filler' providing redress for extreme emotional distress in those instances in which the traditional common law actions did not." *Rigazio v. Archdiocese of Louisville*, 853 S.W. 2d 295, 299 (Ky. App. 1993). Accordingly, "[a] plaintiff may not recover if the alleged conduct simply makes out the claim for another tort." *Boone v. Kent Feeds, Inc.*, 2001 U.S. Dist. LEXIS 9616, *4 (W.D. Ky. July 11, 2001). Kentucky law provides that "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). In the present case, Whitworth alleges the same facts in support of her FMLA claims as she does for her claim for the tort of outrage. Based on this fact, the Defendants contend that her claim for outrage is subsumed by the FMLA, citing *Rigazio*. However, the Defendants' argument on this point fails because the FMLA does not allow recovery for damages for emotional distress. *See Brumbalough v. Camelot Care Ctrs.*, 427 F.3d 996, 1008 (6th Cir. 2005) ("[W]e hold that damages for emotional distress are not allowed under the FMLA."). Therefore, Whitworth's claim for damages for emotional distress under the tort of outrage is not subsumed by her FMLA claims.

intolerable.   The Defendants further contend that, "[t]o the contrary, the undisputed facts reveal that the Defendants' actions were entirely appropriate, and that the Defendants did not discharge Whitworth until it became apparent that she was not taking FMLA-qualified leave and after her physician instructed them to 'disregard' the medical certification." [Record No. 42, p. 42]

To prevail on a claim for the tort of outrage, a plaintiff must prove the following elements: "(1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe." *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996) (citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984).

Here, Whitworth argues that there are three separate bases for her claim for the tort of outrage: (1) Defendant Koplowitz's testimony at his deposition that Whitworth was not "doing what needed to be done for the best interests of the Company" and "[i]t wasn't worth me spending time on;" (2) Defendant Babroa's actions at the time of Whitworth's termination in which she allegedly patted Whitworth's daughter on the head and said, "you'll learn, life's not always fair" or "life's not always easy;" and (3) the Defendants' failure to hire Whitworth back despite her repeated phone calls and their "later representation to the Labor Board that the Company might settle the matter with [Whitworth]" (*citing Kroger Co. v. Willgruber*, 920 S.W. 2d 61 (Ky. 1996)).

In Kentucky, a claim for the tort of outrage requires the plaintiff to prove conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

-24-

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W. 2d 1, 3 (Ky. 1990) (citations omitted). As the Kentucky Supreme Court recognized in *Kroger Co. v. Willgruber*, "citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." *Kroger*, 920 S.W. 2d at 65.

In short, Whitworth has failed to allege any conduct by the Defendants which rises to the requisite standard of "atrocious" and "indecent." Koplowitz's statements at his deposition were not even specifically directed to Whitworth, but instead answered a hypothetical question concerning a person in Whitworth's position. Additionally, these statements were made at a deposition approximately three years after Whitworth's termination. Similarly, Barboa's statements to Whitworth's daughter, if true, could not considered "beyond the bounds of all decency." At the most, these statements amount to "a lack of compassion and lack of taste" and are insufficient to support a claim for emotional distress. *See Humana*, 796 S.W.2d at 3-4 (holding that a nurse's statements to a mother who had just given premature birth to "shut up" and that her baby would be disposed of in the hospital do not rise to the level of "beyond all decency.")

Finally, Whitworth contends that the Defendants' behavior after her termination is similar to that described in *Kroger Co. v. Willgruber*. There, the Supreme Court of Kentucky held that outrageous conduct in connection with a termination can be the basis for a tort of outrage claim. The plaintiff presented evidence that his employer repeatedly misrepresented that he would be

eligible for a job, knowing that the job would not materialize, delayed the payments of his disability benefits, and demanded surveillance of his disability, all in an attempt to induce him to sign release documents absolving the employer of liability for its wrongful discharge. *Kroger*, 920 S.W. 2d at 66-67.

Here, Whitworth's claim for the tort of outrage with respect to the Defendants' failure to rehire her and their representation that they might settle the matter to the Department of Labor are clearly distinguishable from the facts in *Kroger*. Unlike the defendants in *Kroger*, the Defendants in this case did not attempt to induce Whitworth to sign any sort of release or otherwise restrict her rights. Nor did they lead her on wild goose chases or prevent her from accepting other job opportunities. The Defendants action in this case are more akin to "conduct typical of what occurs when an employment relationship ends." *Kroger*, 920 S.W. 2d at 67. Accordingly, Whitworth has failed to show that the Defendants acted "beyond the bounds of all decency" with respect to this aspect of her claim for the tort of outrage.

The Court believes that no reasonable jury could conclude that the statements by Barboa and Koplowitz, or the Defendants' actions in connection with her termination, could support a claim for the tort of outrage. Therefore, the Defendants are entitled to summary judgment on these claims as well as Whitworth's claims for promissory estoppel and interference and retaliation under the FMLA.

## IV.      CONCLUSION

Because Whitworth has failed to present sufficient evidence to establish at least one essential element of each of her claims, the Defendants are entitled to judgment in their favor. Accordingly, it is hereby **ORDERED** as follows:

1.      The Defendants' Motion for Summary Judgment [Record No. 42] is **GRANTED**. The Plaintiff's Motion for Partial Summary Judgment [Record No. 45] is **DENIED**.  All other pending motions are **DENIED** as moot.

2.      The pretrial conference and trial previously scheduled are **CANCELLED** and **SET ASIDE**.

3.      Judgment will be entered this date in favor of the Defendants.

This 6th day of April, 2007.

Signed By:

_Danny C. Reeves_   DCR

**United States District Judge**